STATE of Missouri, Respondent,

v.

Steven Lee WILLIAMS, Appellant.

No. 58264.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., G. Michael
O'Neal, Asst. Atty. Gen., Jefferson City,
for respondent.

Moore, Pettit & Meyer, Walter S. Pettit,
Jr., and Joseph D. Woodcock, Aurora, for
appellant.

WELBORN, Commissioner.

Appeal from judgment and sentence to
life imprisonment entered on jury verdict
finding Steven Lee Williams guilty of
murder in the first degree.

The questions presented on this appeal
require only a brief summary of the facts.
The following statement is taken essential-
ly from appellant's brief:

On January 30, 1971, Steven Lee Wil-
liams was an 18-year-old Army private on

weekend leave from Fort Leonard Wood. He was staying with his grandparents, Mr. and Mrs. Sam Johnson, in rural Lawrence County, Missouri, in the vicinity of Pierce City. He was the product of a broken home and had been shuffled around a great deal as a child. He had lived with his grandparents prior to entering the service.

Appellant had been drinking on the day in question, a Saturday, and had an accident in an auto belonging to his uncle, Jim Johnson. He had returned to his grandparents' home where an argument arose between appellant and his grandfather about appellant's drinking. Appellant was struck by his grandfather and knocked to the floor. He went upstairs and got a gun he had been cleaning prior to the argument. He returned downstairs and entered the living room where his grandparents were watching television. He shot his grandfather and then his grandmother, killing both of them. He took the keys to his grandfather's pickup and left, driving to Sarcoxie to a basketball game because he wanted to see his girl and later to Joplin where he was arrested.

Appellant's statement, introduced in evidence by the state on his trial for first degree murder in the death of his grandfather, provided the details of the killing, there being no other eyewitnesses.

His plea was not guilty by reason of mental disease or defect excusing responsibility. Both the defendant and the state presented psychiatric evidence and the issue was submitted to the jury.

The transcript filed on this appeal also contains a transcript of proceedings in which appellant entered a plea of guilty to first degree murder in the death of his grandmother, with a sentence of life imprisonment thereon.

■ On this appeal, the appellant's first point is that the verdict-directing instruction on the first degree murder charge was

erroneous because it made no reference to his defense of mental disease or defect excluding responsibility. The instruction, in conventional form, made no reference to the defense. The instruction on second degree murder did refer to the defense. The instruction on manslaughter did not.

Instruction No. 9 was as follows:

"If you find that at the time of the offense charged against the defendant he had a mental disease or defect sufficient to deprive him of ability to act wilfully, feloniously, premeditatedly or with malice aforethought then you may not find him guilty either of first, or second degree murder, or manslaughter."

Instruction No. 10 submitted the defense of mental disease or defect. Instruction No. 11 told the jury the effect of a verdict of not guilty by reason of mental disease or defect.

Appellant relies upon the rule applied in cases such as State v. Winn, 324 S.W.2d 637 (Mo.1959). In that case the court reversed a conviction for assault and with intent to kill without malice because the verdict-directing instruction relating to that offense ignored the defendant's self-defense claim. That case applied the rule stated in State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467, 473 (1949), as follows: "An instruction which purports to cover the whole case and entirely ignores a defense supported by evidence is erroneous and constitutes reversible error."

The court in Winn noted that the deficiency may not exist when the instruction, although not expressly referring to the defense, requires the finding of facts which negative the defense. See State v. Pruett, 425 S.W.2d 116, 118–119[1, 2][3] (Mo. 1968); State v. Cook, 428 S.W.2d 728, 732[2] (Mo.1968).

In State v. Murphy, 338 Mo. 291, 90 S. W.2d 103, 112[9] (1936), the court held that a first degree murder instruction which required a finding that the defend-

ant "feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought" killed the deceased was not required to make specific reference to a defense of insanity. The court reasoned that if the jury found the mental elements necessary for murder in the first degree it could not find that the defendant was insane and therefore the jury could not have been misled by the omission of a provision mentioning the defense of insanity.

Anticipating that the state, as it has done, would rely on Murphy, appellant argues that Murphy should be overruled. He points out that Murphy relied in part upon State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1025–1026[23, 24] (1925), in which the court held that a verdict-directing instruction in a forgery case need not refer to the insanity defense, the court reasoning that the requirement that the forgery have been with intent to defraud would require a finding that the defendant was sane when he did it. Appellant states that the court in Winn criticized the underlying reasoning of Douglas. The court in Winn did reject the dictum of Douglas in which that case "gratuitously" criticized the reasoning of self-defense cases. 324 S.W.2d 641. It did not criticize the reasoning of the court on the issue actually in Douglas, the necessity of reference to insanity in the forgery instruction.

The actual holding in Douglas was followed in State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 431–432[17–18] (1947), a robbery case in which the insanity defense was not referred to in the verdict-directing instruction. See also State v. Falbo, 333 S.W.2d 279, 288–289[20, 21] (Mo.1960).

In the interest of avoiding the nice distinctions which the above cited cases have laid down, the pattern criminal instructions approved by this court, effective January 1, 1974, require the verdict-directing instruction to cross reference "each special negative defense upon which a separate numbered instruction has been given." See Notes on Use, MAI–CR No. 2.04. How-

ever, at the time of the trial of this case, the verdict-directing instruction on murder in the first degree was correct, under State v. Murphy, supra, and the trial court should not be charged with error for having given it.

■ Another aspect of the question here is the claim that the reference to insanity in the second degree instruction might have misled the jury into believing that the defense applied only to that offense. The appellant cites State v. Howard, 354 Mo. 38, 188 S.W.2d 17 (1945), in which an instruction on murder in the second degree referred to self-defense but failed to notice the additional defense of insanity. The court held that the instruction had the effect of depriving the defendant of his insanity defense. That is not the case here.

To obtain the connection with the second degree instruction, it must be presumed that the jury read and considered that instruction. However, the presumption does not stop there, but extends to all instructions, including No. 9, which clearly advised the jury that the defense applied to murder in the first degree, murder in the second degree and manslaughter. Lack of responsibility was the only defense before the jury. The defendant took the stand and admitted the shooting. To say that the jury would not have understood that the defense applied to the offense of which they found defendant guilty is contrary to all reason.

Appellant contends that the trial court erred in limiting the opinion testimony of one of his medical witnesses. The defense offered the testimony of Dr. Roy E. Wilson on the mental responsibility issue. Doctor Wilson's credentials as a trained, practicing psychiatrist were established and he was so accepted by the court and permitted to testify to his opinion as to the defendant's mental state at the time of the offense. He expressed the opinion that the defendant had a personality disorder, described as "explosive personality," and that, at the time of the killing, the defend-

ant, because of mental disease or defect, did not appreciate the nature, quality or wrongfulness of his conduct and was incapable of conforming his conduct to the requirements of the law.

Appellant also called as a witness Dr. Harold George, an osteopathic physician and surgeon practicing in Lawrence County. Doctor George testified that he was engaged in the general practice and that his special training in mental diseases was limited to two seminars of four or five days each more than ten years previously. He stated that he testifies in the probate court at sanity hearings. He stated that he saw two or three patients a week with mental health problems and that he diagnosed their condition but referred them to psychiatrists for evaluation and treatment.

Doctor George testified that he saw defendant in September, 1969 and treated him for a sore throat and a "nervous disorder." Following defendant's arrest, Doctor George, as Lawrence County health officer, saw him several times in the jail beginning in the early part of February, 1971. In March, 1971, at the request of defense counsel, he had examined defendant concerning his mental condition and had made a report of his examination to defense counsel.

At this point, counsel for the prosecution objected to the doctor's testifying to the conclusion contained in the report on the grounds that he had not been qualified to testify as an expert. After an off-the-record discussion in chambers, the trial court ruled that the witness could not give an expert opinion on the mental condition of the defendant on the date of the killing, but that he could give his opinion as to the defendant's mental state on the occasions that the doctor examined the defendant.

Defense counsel made an offer of proof that the doctor, if permitted, would testify that in his opinion the defendant had a mental disease or defect known as "explosive personality" prior to January 30, 1971 and that due to such disease or defect defendant did not know or appreciate the nature or wrongfulness of his act at the time of the shooting. The offer of proof was rejected and appellant now contends that the trial court's ruling was erroneous.

That the qualification of an expert witness in a criminal trial is a matter resting primarily in the discretion of the trial court is well established. The rule was recognized and applied in State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, 49[5, 6] (1940), cited and relied upon by appellant. Doctor George's training and experience in dealing with mental diseases were limited. He testified to no experience in making determination of mental capacity for the purpose of criminal responsibility. His testimony would have been cumulative, testimony on the subject having been already offered by way of a qualified expert.

In such circumstances, no abuse of discretion on the part of the trial court, warranting a holding of reversible error, has been demonstrated.

Appellant's final assignment of error is based upon the trial court's permitting the 12 jurors and the alternate to separate after they had been selected and impaneled and permitting them to go home for the night, over the objection of defense counsel.

The first day of the trial was spent in choosing a jury qualified to impose the death penalty. At approximately 3:20 in the afternoon, the 12 jurors selected to try the case and one alternate were seated in the jury box. The trial court informed the jurors that they would not be sworn at that time but they would be excused until the next morning when they should return, prepared to stay together for the duration of the trial. The court admonished them not to discuss the case with anyone or to allow any discussion of it in their presence. Defense counsel's objection to the separation was overruled.

Appellant contends that in this capital case it was mandatory that the jury not separate. § 546.230, RSMo 1969, V.A.M.S.; State v. Gray, 100 Mo. 523, 13 S.W. 806 (1890). He argues that, in this case, the only thing remaining to be done that would have made the rule applicable to this jury was to swear the jury and that to permit their separation, in these circumstances and over his objection, gave rise to ample opportunity for misconduct and improper influence by friends and the news media. There was no claim that misconduct or improper influence did in fact occur.

Several cases hold that the prohibition against separation of the jury in capital cases does not become effective until the jury has been sworn. State v. Burns, 33 Mo. 483 (1863); State v. Todd, 146 Mo. 295, 47 S.W. 923, 924–925 (1898); State v. Spencer, 355 Mo. 65, 195 S.W.2d 99, 101[1, 2] (1946). As pointed out by appellant, the court in those cases also noted a lack of objection by the defendant to the separation. Appellant contends that, inasmuch as he did object, the rule of those cases is inapplicable.

The determinative fact in those cases, which permitted an exercise of discretion by the trial court, was that the jury had not been sworn, not the absence of objection. Until they were sworn, they were not jurors and therefore the mandatory rule laid down by § 546.230, supra, in capital cases, did not become applicable until such time, whether or not objection was made. Such rule controls in this case. No error on the part of the trial court has been shown.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the judges concur.