STATE of Missouri ex rel. William
Henry EGGERS, Relator,

v.

The Honorable Richard ENRIGHT, Judge
of the Circuit Court of St. Louis County,
Missouri, Division No. 3, Respondent.

No. 61964.

Supreme Court of Missouri,
En Banc.

Dec. 15, 1980.

Rehearing Denied Jan. 13, 1981.

Timothy M. Gardner, Public Defender, Clayton, for relator.

Richard A. Barry, Asst. Pros. Atty., Clayton, for respondent.

RENDLEN, Judge.

Relator unsuccessfully sought prohibition in the Court of Appeals, Eastern District. He now petitions this Court to prevent respondent, the Honorable Richard Enright, Judge of the 21st Judicial Circuit, from proceeding further in the capital murder prosecution of relator, William Henry Eggers. Eggers contends that after a jury determines his case and if a guilty verdict is returned, he should be allowed under § 557.-036.2, RSMo 1978, to change the course of trial by waiving further service of the jury,[1] and require the judge alone to hear evidence in the second stage of the bifurcated capital murder procedure provided by § 565.006.2, RSMo 1978. Further, that the judge alone should assess punishment. To accomplish these ends, relator prays respondent be restrained (1) from denying his motion "for a jury–waived sentencing" and (2) "from denying . . . [his] motion in limine to prohibit the prosecuting attorney from conducting a voir dire examination regarding the death penalty in said cause." For reasons hereinafter discussed, the extraordinary legal writ is inappropriate and the preliminary rule will be quashed.

 The prime purpose of the writ is "to prevent usurpation of judicial power," § 530.010, RSMo 1978, not to provide a remedy for all legal difficulties nor serve as a substitute for appeal, *State ex rel. Berbiglia v. Randall*, 423 S.W.2d 765, 770 (Mo. banc 1968). Though appeal must provide an adequate remedy, the essential function of prohibition is to confine judicial activities within limits of cognizable authority, preventing actions in want or in excess of the court's jurisdiction. *State ex rel. Allen v. Yeaman*, 440 S.W.2d 138, 145 (Mo.App. 1969). Further it has been held that prohibition will not be granted except when usurpation of jurisdiction or an act in excess of the same is "clearly evident." *State ex rel. McCarter v. Craig*, 328 S.W.2d 589, 591 (Mo. banc 1959), and the writ should not be used for correction of an alleged or anticipated judicial error, *State ex rel. Boll v. Weinstein*, 365 Mo. 1179, 295 S.W.2d 62, 67 (1956). Procedurally it is relator's burden to establish that respondent has usurped or acted in excess of his jurisdiction. In this case it is readily apparent that respondent acted within the authority conferred by Chapter 565, RSMo, (enacted separately from the "New Criminal Code")[2] entitled "offenses against the person" and more particularly the capital murder statutes,[3] enacted in the laws of 1977 as House Bill 90 to become effective May 26, 1977. It was under these non–code sections, dealing exclusively with the crimes of the sort in question and the unique bifurcated hearing system established especially for such crimes, that respondent denied defendant–relator's motions for court assessed punishment and to restrict the State's conduct of voir dire. No serious claim can be made that the court exceeded its jurisdiction, for under § 565.006.2 it is provided that "[i]n capital murder cases in which the death penalty may be imposed by a jury or judge sitting without a jury, the additional procedure provided in § 565.012 shall be followed. *The jury, or the judge in cases tried by a judge, shall fix a sentence* within the limits prescribed by law." (Emphasis added.)

---

1. Although nothing in the statutes so provides, apparently in appellant's view the jury would then be discharged.

2. The "New Criminal Code" containing § 557.-036.2 upon which relator bases his claim was enacted in the Laws of 1977 as Senate Bill 60 to become effective January 1, 1979.

3. The special statutory sections of RSMo 1978 dealing with Missouri's capital murder are:

565.001–Capital Murder Defined
565.006–Bifurcated Hearing Procedure Established for Trials for Capital Murder
565.008–Punishment Provisions for Capital Murder
565.012–Evidence to be Considered in Assessing Punishment in Capital Murder Cases
565.014–Supreme Court to Review All Death Sentences

Under this explicit language it is *the jury* that *shall fix* the sentence if the *jury* has heard the case and determined guilt, as contrasted with cases "tried by a judge" in which the judge has determined guilt and in such instances it is he that *shall fix* the sentence. Relator has not waived a jury; to the contrary he expects a *jury trial*, yet insists that respondent disregard the cited provisions of § 565.006.2 and if a guilty verdict is returned, then discharge the jury, hear the additional evidence and fix the sentence. What relator asks is for the trial judge to act contrary to the clear mandate of § 565.006.2 and that we compel by the writ such conduct. As previously noted, for the writ to issue the usurpation or act in excess of jurisdiction must be *clearly evident*. The writ should not be used to correct or prevent the exercise of judicial power nor for the correction of alleged or anticipated *judicial error*. How can it be said the trial court's adherence to the requirement of the statute is a "clearly evident" usurpation of jurisdiction? We hold that it is not.

Relator however relies on § 557.036.2,[4] contending it overrides the clear language of § 565.006 and its related sections. The question is one of statutory construction.

Weighing the jurisdictional quality of respondent's acts, we must be aware that the bifurcated hearing provided by our capital murder statute under mandate of the United States Supreme Court, see *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), was in place and effective at the time the new criminal code containing § 557.036.2 became effective on January 1, 1979. Nothing in the code expressly repealed any provision of the capital murder law. On the other hand, § 556.031.2 of the code provides, "[o]ffenses defined outside of this code and not repealed shall remain in effect …"[5] Further it should be noted that chapter 557, the "general sentencing provisions" of the new criminal code (containing § 557.036 which defendant contends *absolutely controls* here) is prefaced by § 557.011 whose language again demonstrates a legislative awareness of the criminal statutes outside the code.[6] Thus the legislative intent to leave undisturbed special statutes defining crimes outside the code finds expression in various code provisions. Hence, we must ask, did the legislature intend that § 557.036.2 repeal *by implication* the provisions of § 565.006.2. In this connection it should be remembered the Missouri statutory provisions in capital cases were adopted pursuant to the requirements of the United States Supreme Court prescribed in *Gregg, supra,* and related cases. Significantly, the Court in *Gregg* stated at 190, 96 S.Ct. at 2933 "[j]ury sentencing has been considered desirable in capital cases in order 'to maintain a link between the contemporary community values and the penal system—a link without which the determination of punishment could hardly reflect the evolving standards of decency that mark the progress of the

---

4. Section 557.036.2 provides:

 The court shall instruct the jury as to the range of punishment *authorized by statute* and upon a finding of guilt to assess and declare the punishment as a part of their verdict, *unless the defendant requests in writing that the court assess the punishment in case of a finding of guilt.* … (Emphasis added.)

5. Section 556.031, RSMo 1978, in pertinent part provides:

 1. The provisions of this code shall govern the construction and punishment for any *offense defined in this code* and committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such an offense.

2. *Offenses defined outside of this code and not repealed shall remain in effect, but* unless otherwise expressly provided or unless the context otherwise requires, the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such offenses. (Emphasis added.)

6. Pertinent portions of § 557.011.1, RSMo 1978, effective January 1, 1979, are as follows:

 Every person found guilty of an offense shall be dealt with by the court in accordance with the provisions of this chapter, except that for offenses defined outside this code and not repealed, the term of imprisonment or the fine that may be imposed is that provided in the statute defining the offense; …

maturing society.'" Under Missouri law the jury's role in the sentencing process has been preserved and enhanced in our system dealing with capital murder. Additionally, if respondent were to interpret the statute as requested by relator it would *repeal by implication* portions of the capital murder statutes, a process not favored in our law. *Folk v. City of St. Louis*, 250 Mo. 116, 157 S.W. 71 (1913). The capital murder statutes deal only and particularly with that non–code crime and its discrete trial and sentencing procedures. Nothing in our law contemplates that capital murder's unique trial and sentencing mechanism be applicable to any other crime. In contrast, § 557.-036.2 addresses itself in broad terms to sentencing procedures in general. Pertinent to this problem of interpreting *general* as contrasted with *particularized* legislation is the following language of the Court in *Folk, supra*, 157 S.W. at 75:

> A special statute . . . applicable to a particular [subject] is not repealed by a statute general in its terms and application, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by it. . . . Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving

effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.

Recently this canon of statutory construction was stated this way:

> A statute dealing with a subject generally will rarely have the effect of repealing by implication, either wholly or partially, an earlier statute which deals with a narrower subject in a particular way.

*State ex rel. Miller v. Crist*, 579 S.W.2d 837, 838 (Mo.App.1979). While we need not make a final determination of relator's contention for "an absolute right to have the issue of punishment submitted to the Court . . . ," [7] from the above analysis it cannot be said the trial court, acting under the capital murder statute, exceeded its jurisdiction. If the issue remains, it may be considered on appeal.

The preliminary writ in prohibition is quashed.

DONNELLY, MORGAN and HIGGINS, JJ., concur.

WELLIVER, J., concurs in result.

SEILER, J., dissents in separate dissenting opinion.

---

**7.** As a corollary to his claim of "absolute right" for judge assessed punishment, relator contends the jury need not be death qualified during voir dire under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). He speculates, but offers no proof, that a *Witherspoon* qualified jury would be more conviction prone and a new trial as to punishment alone will not provide adequate relief. While loathe to resort to such conjecture, if we were to do so, a number of undesirable problems become immediately apparent.

Assuming the requested restrictions of voir dire were imposed, what rule should be followed? Will the array *be advised* they are *not* to be burdened with the sentencing responsibility, or will that go unsaid? If the former, an argument can be made that a jury knowingly

so unburdened could more comfortably find guilt. However, if voir dire were restricted and the array *not advised* of their *limited* function, neither the court nor the parties could ascertain the veniremen's predilections or harbored bias in this regard, thus hampering the exercise of challenge for cause and peremptory strikes so important in the jury selection process. In addition, how could the court be assured its order limiting the jury's function would not receive public attention? Would the courtroom be closed and the record of such proceedings and orders be kept from public view? These are but a few of the difficulties springing from relator's suggested interpretation of the statute and the change he would have us impose upon bifurcated capital murder proceedings.

BARDGETT, C. J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

I respectfully dissent.

The principal opinion starts by finding a writ of prohibition to be procedurally inappropriate. There is no question, in this case, as to the appropriateness of prohibition if a certain conclusion is reached on the substantive issue. The principal opinion cites *State ex rel. McCarter v. Craig*, 328 S.W.2d 589 (Mo. banc 1959) for the proposition that prohibition will not be granted except when the act in excess of jurisdiction is "clearly evident". In *McCarter* this court first made a determination that the evidence before the trial court was sufficient to establish relator's county of residence as being Dent County. Having made such a determination it then became evident that the trial court was in excess of its jurisdiction in refusing a motion to dismiss because summons and service had clearly been void under the applicable venue statute, § 508.-010(1) RSMo 1949.

Here, with regard to the trial court's overruling of relator's first motion, we have a single question of law: Does § 557.036.2 RSMo 1978 [1] permit relator to waive a jury only for the pre-sentence hearing of a bifurcated capital murder trial. The resolution of this question, as in *McCarter*, decides whether or not prohibition is appropriate or not. The trial court was either clearly within its jurisdiction or clearly in excess of it.

The principal opinion concludes that the general sentencing provisions of the criminal code, specifically § 557.036.2, do not apply to capital murder case because capital murder is a non–code offense. A statute linking non–code provisions with the criminal code, § 557.011.1 provides that,

"Every person found guilty of an offense shall be dealt with by the court in accordance with the provisions of this chapter [of the criminal code] *except* that for offenses defined outside this code and not repealed, the *term of imprisonment* or the *fine* that may be imposed is that provided in the statute defining the offense...." (Emphasis added).

The principal opinion cites the above–quoted statute as indicating "[t]he legislative intent to leave undisturbed special statutes defining crimes outside the code." Section 557.011.1, however, excepts only the "term of imprisonment" or the "fine" imposed for non–code offenses from being in accordance with the provisions of chapter 557. There is no language in § 557.011.1 which would support the principal opinion's contention that the sentencing procedure for a non–code offense (here, capital murder) should not be conducted according to the provisions of the criminal code. By negative implication, non–code offenses, except for provisions dealing with terms of imprisonment and fines, *should* be dealt with in accord with the provisions of chapter 557.

Similarly, § 556.031.2 [2] indicates that criminal code provisions should govern the construction of non–code offenses committed after January 1, 1979 (the offense in question occurred May 16, 1979) "unless otherwise *expressly* provided or unless the context *requires*." (Emphasis added).

---

1. Section 557.036 is the general sentencing provision of the criminal code and permits a defendant to waive jury sentencing. Subsection 2 reads in pertinent part as follows:

 "The court shall instruct the jury as to the range of punishment authorized by statute and upon a finding of guilt to assess and declare the punishment as a part of their verdict, unless the defendant requests in writing that the court assess the punishment in case of a finding of guilt."

 Unless otherwise indicated, all citations are to RSMo 1978.

2. Section 556.031.2 reads as follows:

 "Offenses defined outside of this code and not repealed shall remain in effect, but unless otherwise expressly provided or unless the context otherwise requires, the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979, as well as the construction and application. of any defense to a prosecution for such offenses.

There are many non-code offenses, for example, all the weapons offenses (chapter 571, except armed criminal action), election offenses (chapter 130, specifically § 130.081) and drug offenses (chapter 195) which likewise would not, under the principal opinion theory, have the benefit of § 557.036.2. It is doubtful that the legislature intended this result. What needs to be shown are specific provisions in non-code criminal statutes which address sentencing in such a way as to contradict the general sentencing provision of the criminal code.

In arriving at its conclusion that § 565.006.2 (determination of punishment in capital murder cases) does not permit a defendant to waive a jury only for the sentencing phase of a capital murder trial, the principal opinion relies on the following language of § 565.006.2:

> "In capital murder cases in which the death penalty may be imposed by a jury or judge sitting without a jury, the additional procedure provided in section 565.-012 shall be followed. The jury, or the judge in cases tried by a judge, shall fix a sentence within the limits prescribed by law."

The principal opinion found that the above language expressly provided that a defendant either waived a jury for *both* the guilt and sentencing phase of the trial or had a jury for both phases. Such a conclusion overlooks that subsection 2 is concerned *only* with the sentencing phase of the trial. An examination of § 565.006 reveals that each subsection is concerned exclusively with a different procedural stage of a capital murder trial. Subsection 1 is concerned with the determination of guilt or innocence, subsection 2 with sentencing, and subsection 3 with limiting retrial to the issue of punishment if the trial error occurred during the presentence hearing.

Subsection 2 begins by assuming a verdict or finding of guilty. The rest of subsection 2 deals with the presentence hearing. Even the above-quoted language of subsection 2 demonstrates this. The language "capital murder cases in which the death penalty may be imposed" assumes that guilt has already been determined. This is so because the "additional procedure provided in section 565.012" which shall be followed in such cases (the consideration of aggravating and mitigating circumstances), is applicable only after guilt has been determined. That the death penalty may be "imposed by a jury or judge sitting without a jury", then, speaks only to whichever is going to be the trier of fact during the sentencing phase. It does not perforce require that if a *jury* finds guilt pursuant to *subsection 1* that a *jury* must fix the punishment pursuant to *subsection 2*. Likewise, the next provision that "[t]he jury, or judge in cases tried by the judge, shall fix [the] sentence" only states that whichever was the trier of fact (that is, the issue of fact as to aggravating or mitigating circumstances) *during the sentencing phase* shall fix the sentence.

The principal opinion states it is necessary to ask whether the legislature intended that § 557.036.2 repeal by implication the provisions of § 565.006.2 and decides that it did not, resorting to certain rules of statutory construction—that repeal by implication is disfavored, and that a special statute is not repealed by a general statute or is regarded as an exception to the general one, citing a 1913 case, *Folk v. City of St. Louis*, 250 Mo. 116, 157 S.W. 71.

This is arguing in a circle. It assumes there is a conflict between the two statutes and proceeds accordingly, when the question which must first be resolved (rather than the answer being assumed) is whether there is in fact any conflict whatever. As seen from the earlier analysis herein, there is no conflict. The rule about repeal by implication being disfavored and the other rules of construction where there are conflicting statutes are not relevant to the issue before us. Nothing is being repealed. Section 565.006.2 permits the waiver of jury sentencing, if not expressly, then in conjunction with § 557.036.2.

The principal opinion would bolster its argument by referring to the language in *Gregg v. Georgia*, 428 U.S. 153, 190, 96 S.Ct.

2909, 2933, 49 L.Ed.2d 859 (1976) that "jury sentencing has been considered desirable in capital cases in order to maintain a link between contemporary community values and the penal system." The Supreme Court, however, in so saying was not addressing the question of jury waiver. Furthermore, what is desirable is not the same as what may or may not be permitted. There is no doubt that in Missouri, *without taking § 557.036.2 into account*, a defendant may waive a jury for *both* the guilt and sentencing phases of the trial, as the principal opinion concedes. This is not only implicit in the language of § 565.006.2, but is expressly permitted in Mo.Const. art. I, § 22(a). When this is possible, there is no policy reason why a defendant cannot, as a corollary, choose to have a judge fix sentence after a jury has found the defendant guilty.[3] There does not seem to be any reason to give a defendant whose life is at stake any less choice then that given other defendants.

In summary, § 565.006.2 does not contain language which prohibits the sentencing phase from being conducted by a judge after a jury has found guilt. The general sentencing provision of the criminal code, § 557.036.2, does give a defendant the right to have the judge fix the sentence. Its application to capital murder cases is not contrary to § 557.011.1 and there is no repeal of § 565.006.2. I would therefore conclude that a defendant has the right under § 557.036.2 to waive a jury for the sentencing phase of a capital murder trial after having been convicted by a jury in the guilt phase of the trial. In view of this conclusion, it therefore follows that the trial court below acted in excess of its jurisdiction.

## II

The trial court also denied defendant's second motion that the prosecutor be pro-

hibited from conducting a voir dire examination regarding the death penalty. The purpose of defendant's motion was to prevent the formation of a "death qualified" jury. A "death qualified" jury is one devoid of people unable to impose the death penalty. The issue of whether such a jury was proper was addressed in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The *Witherspoon* court decided a narrow issue: a prosecutor could not strike for cause a juror who indicated that he had scruples against the death penalty unless it were also determined that the juror could not, under any circumstances, vote for the death penalty. Without such a determination, the jury fell short of being impartial and thus did not meet the standards of the sixth and fourteenth amendments.

The *Witherspoon* court refused to consider the defendant's contention that a "death qualified" jury was more prone to convict and was therefore not impartial with respect to determination of guilt or innocence. The court found the data supporting such a proposition "too tentative and fragmentary." It did observe, in a different context, that even a jury screened only of those who would, under no circumstances, vote for the death penalty might be constitutionally invalid:

"a defendant convicted by such a jury in some future case might still attempt to establish that the jury was less than neutral with respect to *guilt*. If he were to succeed in that effort, the question would then arise whether the State's interest in submitting the penalty issue to a jury capable of imposing capital punishment may be vindicated at the expense of the defendant's interest in a completely fair determination of guilt or innocence . . . ."

391 U.S. at 520 n. 18, 88 S.Ct. 1776 n. 18 (original emphasis).

---

**3.** Many states, despite the language in *Gregg,* permit or *mandate* court sentencing in death penalty cases. For statutes which expressly permit a defendant to waive jury sentencing, *see, e. g.* Ill.Ann.Stat. ch. 38 § 9–1(d)(3) (Smith-Hurd 1979); Md.Code Ann. art. 27, § 413(b)(3); (1980 Supp.); Utah Code Ann. § 76–3–207(1) (1978); Wyo.Stat. § 6–4–102(a)(iii) (1977). For statutes which mandate court sentencing even after a jury trial, *see, e. g.* Ariz.Rev.Stat. § 13-703 (1980 Supp.); Idaho Code § 19–2515 (1979); Mont.Rev. Codes Ann. § 46–18–301 (1979); N.M.Stat.Ann. § 31-18-13 and § 31-18 14 (1980 Supp.); *Ohio Rev. Code Ann.* § 2929.03(C) (Baldwin 1979); Or.Rev.Stat. § 163.116 (1979).

(In *Grigsby v. Mabry*, D.C., 483 F.Supp. 1372, *modified*, 637 F.2d 525 (8th Cir. 1980) the defendant attempted to do what the *Witherspoon* court suggested. In that case, the district court held that such a showing could be attempted and that a trial court's refusal to allow a continuance so that the defendant could gather and present evidence to that effect was error. The district court in *Grigsby* stated:

"The evidence in 1976, and now, is considerably less fragmentary and tentative than it was in 1968 when *Witherspoon* was decided. It is substantial enough so that this Court concludes that the refusal of the trial court to allow a continuance so that the petitioner could attempt to make the evidentiary showing suggested in *Witherspoon*, of the guilt proneness of 'death qualified' juries so seriously denigrated his constitutional right to an impartial jury that the denial amounted to an abuse of discretion. The evidence brought forth in this habeas proceeding clearly suggest that the exclusion of those who unalterably oppose the death penalty may affect guilt determination."

483 F.Supp. at 1388.

The evidence to which the district court refers includes several published and unpublished studies which are listed and, to some extent, discussed throughout the opinion. Testimony by expert witnesses also aided the court in making its determination.

The Eighth Circuit modified the decision by ordering that an evidentiary hearing be conducted in the district court rather than remanding the cause back to the state trial court.

Here, however, relator has not introduced any evidence to prove that a "death qualified" jury is more conviction prone. In this case it is not necessary. If defendant's first motion were sustained, as I contend it should be, then the jury would not assess the punishment. This being so, there is no longer any reason to go into a juror's feelings about the death penalty unless it was contended that a juror with scruples against the death penalty would be unfit to make a determination of guilt or innocence. I know of no scientific evidence which shows that a juror with scruples against the death penalty is more likely to ignore the instructions given him, and which he has agreed to follow, than those in favor of the death penalty.[4] That a prosecutor would want to question veniremen about the death penalty seems to indicate that he would prefer to have a "death qualified" jury determine guilt even if it were not going to fix sentence. Is there any other reason for this than he too believes that a "death qualified" jury is more conviction prone?

The principal opinion, in footnote 6, assumes arguendo that defendant did make a showing that a "death qualified" jury was more conviction prone and then concerns itself with "a number of unsatisfactory possibilities" that would arise. First, it is asked, should the jury be advised that they will not fix the sentence if it finds the defendant guilty, or should nothing be said. The principal opinion worries that if the jury were so advised, an argument could be made that the jury "knowingly so unburdened could more comfortably find guilt." A similar contention has already been considered and dismissed by this court and other Missouri courts several times. *See e. g.*, *State v. Brown*, 443 S.W.2d 805 (Mo. banc 1969); *Crawford v. State*, 554 S.W.2d 491 (Mo.App.1977); *State v. Scott*, 535 S.W.2d 281 (Mo.App.1976). In those cases, the issue was whether it was proper to instruct a jury that if, after finding guilt, it were unable to assess punishment, the court

---

4. In *Grigsby v. Mabry*, 637 F.2d 525, 529 (8th Cir. 1980) (concurring opinion) Judge Heaney observed:

"The state has a significant interest in seeing that those who could not levy the death penalty not be allowed to participate in the assessment of the sentence in a capital case; otherwise, a single juror could nullify the state legislature's determination that capital punishment should be available and might be the appropriate punishment. But, that interest is not implicated when a scrupled juror is excluded for cause for guilt determination *so long as the juror swears to decide the guilt issue on the basis of the law and the evidence.*" (Emphasis supplied).

would assess punishment. In finding the instruction [5] proper, this court in *Brown, supra* at 811 declared its confidence in the jury's ability to follow instructions and not to shirk its responsibility:

"A conclusion on our part that Instruction No. 6, as worded, would cause a jury to shirk its responsibility of fixing punishment would indicate a distrust of the jury and a belief that it would not follow the directions of the court as set forth in Instruction No. 6. We instruct the jury in connection with their determination of guilt or innocence and the law to follow in those deliberations. It would be illogical to trust the jury to follow such instructions pertaining to defendant's life and liberty and at the same time be unwilling to trust the jury to follow an instruction with reference to procedure in the event it should agree on guilt but not on punishment. We perceive no valid basis for assuming that the jury would not follow the latter instruction or that it would shirk its obligation to assess punishment if it should find defendant guilty."

An extension of the *Brown* reasoning is that a jury that knows it will not fix punishment (as opposed to one that knows it does not have to fix punishment if the jurors cannot reach an agreement) is still capable of following the instructions regarding determination of guilt.

The other alternative is not to tell the jury that the court will fix punishment, but to simply instruct them on reaching a verdict. This procedure was used under the old Second Offender Act § 556.280, RSMo 1969. See MAI 2.04, Special Note on Use 3.c. This statute was in effect for approximately twenty years and was applied in hundreds, if not thousands, of cases. The jury was not instructed with regard to punishment nor was there any mention of it on the verdict forms given to the jury. It thus was clear to the jury that they were not going to fix sentence. They were, therefore "knowingly unburdened" from their duty to fix sentence; yet, there were no protests that the jury could more "comfortably find guilt." If the system worked satisfactorily in trying second offender cases, there is no reason why it would not also work in the few capital murder cases in which a defendant waives the jury for the sentencing phase only.[6] The principal opinion expresses concern that if this procedure were followed, "neither the court nor the parties could ascertain the veniremen's predilections or harbored bias" with regard to the death penalty. This only brings up the same point, discussed above, as to whether a juror who states he will follow the instructions and whose only duty is to determine guilt is capable of finding guilt when he is personally against the death penalty.

Besides trusting that a juror will follow instructions with regard to determining guilt, there is another reason not to mention the death penalty. This case is one step removed from *Witherspoon* in which the *jury* was going to fix punishment. It should be remembered that the *Witherspoon* court suggested that a "death qualified" jury might be constitutionally invalid even for the purpose of determining guilt if a defendant could show that such a jury was more conviction prone. With a growing body of evidence to support such a conclusion, as discussed in *Grigsby, supra*, the tables may be turning and defense counsel might want to inquire whether a juror is for the death penalty to see if he is biased *towards* finding guilt. Since the jury would not fix the punishment in the case before us, the death penalty should not be mentioned on voir dire either way.

---

5. The instruction is now a part of MAI–CR2d 4.50.

6. In Ohio, a judge, or a panel of judges, fixes sentence and, under the capital offense sentencing statute, Ohio Rev.Code Ann. § 2929.-03(B) Baldwin (1979) no mention of the penalty which may result may be made to the jury charged with reaching a verdict.

Many other states have not found court sentencing after a jury verdict to be a problem. They either permit or require court sentencing in death penalty cases. *See* other statutes cited note 3, *supra*.

Finally, the principal opinion expresses concern that the "order limiting the jury's function" should not receive public attention. I assume this refers to an order granting jury–waived sentencing and/or prohibiting the prosecutor from conducting voir dire examination on the death penalty. I fail to see the problem. There is nothing wrong with the public being aware of proper judicial procedure. There is no reason to close the courtroom. If the concern is that the jury would find out such a concern was never expressed with regard to the many jury trials under the old Second Offender Act. Further, in all capital cases a jury remains sequestered. Section 546.230; *State v. Williams*, 515 S.W.2d 463 (Mo. 1974); *State v. Bayless*, 362 Mo. 109, 240 S.W.2d 114 (1951). Whatever information that may be available to the public need not be made available to the jury.

In conclusion, the circuit court should grant both of relator's motions. A writ of prohibition to that effect should be made absolute.