637 F.2d 525
 James T. GRIGSBY, Appellant,
v.
James MABRY, Commissioner, Arkansas Department of
Correction, Appellee.
James T. GRIGSBY, Appellee,
v.
James MABRY, Commissioner, Arkansas Department of
Correction, Appellant.
 Nos. 80-1262, 80-1286.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Nov. 6, 1980.
 
 William R. Wilson, Jr., argued, Wilson & Engstrom and Thomas M. Carpenter, Lessenberry & Carpenter, Little Rock, Ark., for appellant.
 Steve Clark, Atty. Gen., for the State of Ark., Victra L. Fewell and Jack W. Dickerson, argued, Asst. Attys. Gen., Little Rock, Ark., for appellee.
 Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 Petitioner Grigsby was convicted of capital felony murder in Franklin County Circuit Court for the State of Arkansas. In 1978, Grigsby filed a petition for a writ of habeas corpus in district court, alleging, among other grounds, that the determination of his guilt by a "death-qualified" jury deprived him of trial by a fair and impartial jury.[1] The district court held "that the refusal of the trial court to allow a continuance so that the petitioner could attempt to make the evidentiary showing suggested in Witherspoon,[2] of the guilt proneness of 'death-qualified' juries so seriously denigrated his constitutional right to an impartial jury that the denial amounted to an abuse of discretion." Grigsby v. Mabry, 483 F.Supp. 1372, 1388 (E.D.Ark.1980). The district court ordered that the state grant Grigsby an evidentiary hearing on his constitutional claim and allow him to appeal the decision or retry him. Both Grigsby and the state appealed.
 
 
 2
 I. The Constitutional Issue.
 
 
 3
 This court can entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Grigsby's constitutional claim is that he was denied a trial by an impartial jury. We deem this constitutional issue distinct from the question whether the trial court abused its discretion in refusing to grant a continuance so that Grigsby could present his constitutional claim. Jones v. Swenson, 469 F.2d 535, 537 (8th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2756, 37 L.Ed.2d 156 (1973); United States v. Leach, 429 F.2d 956, 963 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); Johnson v. United States, 291 F.2d 150, 153 (8th Cir.), cert. denied, 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961); Davis v. Alabama, 545 F.2d 460, 466 (5th Cir.), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). If the district court had decided the abuse of discretion issue against Grigsby, rather than for him, his constitutional claim would nevertheless have survived because he attempted to present that claim to the state court and subsequently exhausted his state remedies. 483 F.Supp. at 1376. Traditionally, the matter of a continuance is within the discretion of the trial court. Jones v. Swenson, 469 F.2d at 537. See also Venable v. State, 260 Ark. 201, 538 S.W.2d 286 (1976). In some circumstances, however, the trial court's refusal to grant a continuance may deny a defendant effective assistance of counsel or be so arbitrary as to violate due process rights. See Davis v. Alabama, 545 F.2d at 466-67. But whether, in this case, there occurred any abuse of discretion is independent of the petitioner's right to an evidentiary hearing on his claim that he was denied trial by an impartial jury.
 
 
 4
 The record demonstrates that Grigsby did not receive a full and fair evidentiary hearing in state court on three factual issues: (1) whether death-qualified jurors are more likely to convict than jurors selected without regard for their views on the death penalty, (2) whether death-qualified jurors are more likely to convict of a higher degree of murder than jurors selected without regard for their death penalty views, and (3) whether the jurors in this case were in fact death-qualified. These questions must be answered because if they are answered in the affirmative, Grigsby has made a case that his constitutional rights have been violated and he would be entitled to a new trial.
 
 
 5
 In Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court stated:
 
 
 6
 Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.
 
 
 7
 Id. at 312-13, 83 S.Ct. at 756.
 
 
 8
 The district court found the petitioner's evidence sufficient to raise a serious question whether a death-qualified jury is more likely to convict than a jury selected without regard for jurors' scruples against the death penalty.[3] 483 F.Supp. at 1387. See Hovey v. Superior Court, 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (1980). Grigsby's counsel indicated at oral argument before this court, given the opportunity for a full evidentiary hearing, that there exists additional evidence which will be produced to supplement the record. Thus, the record is not complete for our review to determine whether petitioner will prevail or not on the merits. Under the circumstances, we find no error in requiring a further evidentiary hearing.
 
 
 9
 II. The Appropriate Forum.
 
 
 10
 The district court remanded this case to the state trial court for an evidentiary hearing on Grigsby's constitutional claim. We conclude, however, the nature of the habeas corpus remedy and the jurisdictional threshold of exhaustion of state remedies makes the district court a more appropriate forum for the required evidentiary hearing. The district court found that Grigsby had exhausted the state remedies on his claim but decided to allow the state courts another opportunity to rule on Grigsby's claim, even though the state had three times previously denied his request for a hearing. 483 F.Supp. 1376. The Supreme Court has stated that Congress did not intend section 2254 "to require repetitious applications to state courts." Brown v. Allen, 344 U.S. 443, 449 n.3, 73 S.Ct. 397, 403 n.3, 97 L.Ed. 469 (1953); Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971). Nor does the mere possibility of success in additional state proceedings bar federal relief. Roberts v. LaVallee, 389 U.S. 40, 42-43, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967). The district court's opinion reflects extensive research into the record, the psychiatric evidence on death-qualified jurors, and the relevant case law. Since Grigsby exhausted his state remedies, we conclude the district court should have reached the merits of his claim rather than holding that the trial court abused its discretion in refusing to grant a continuance. The Fifth Circuit has addressed the propriety of remanding a petitioner's constitutional claims for a state court hearing and requiring further appellate proceedings in the state court. In Dixon v. Beto, 472 F.2d 598 (5th Cir. 1973), the court stated:
 
 
 11
 The exhaustion of state remedies doctrine, ... is based on principles of comity to afford the state courts the first opportunity to pass on the claims of state prisoners that they were deprived of federal constitutional rights in connection with their restraint. Once state remedies are exhausted, it is the duty of the federal courts to pass on such claims. The federal courts are not empowered to order the state courts to make remedies available nor are they authorized to dictate the type of hearing which is to be conducted by the state courts.
 
 
 12
 Id. 472 F.2d at 599 (emphasis added).
 
 
 13
 Accord, Anderson v. Beto, 469 F.2d 1076, 1077-78 (5th Cir. 1972). This limitation on federal courts seems to have been modified to a preference that the evidentiary hearing be held in the district court rather than the state court, Lokos v. Capps, 569 F.2d 1362, 1363 (5th Cir. 1978); accord, Fitch v. Estelle, 587 F.2d 773, 778-79 (5th Cir.), cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 111 (1979), but once exhaustion has been shown the policies favoring a federal hearing remain the same. See generally Henson v. Wyrick, No. 79-1808 (8th Cir. April 29, 1980); Ross v. Wyrick, 581 F.2d 172 (8th Cir. 1978); Murrah v. Arkansas, 532 F.2d 105, 107-08 (8th Cir. 1976); Newman v. Henderson, 539 F.2d 502, 504 (5th Cir. 1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977); Spratley v. Paderick, 528 F.2d 733 (4th Cir. 1975); Gibson v. Blair, 467 F.2d 842, 844 (5th Cir. 1972).
 
 
 14
 This court has recognized the broad discretion of the district court to "send a case back to the state courts to resolve issues more properly considered by the judge who experienced the trial first hand." United States ex rel. McQueen v. Wangelin, 527 F.2d 579, 581 (8th Cir. 1975)[4]; see also Hart v. Eyman, 458 F.2d 334, 338-40 (9th Cir.), cert. denied, 407 U.S. 916, 92 S.Ct. 244, 32 L.Ed.2d 691 (1972). The issues in this case, however, are not of the kind more properly considered by the judge who experienced the trial first hand. Cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); Patterson v. Lockhart, 513 F.2d 579, 581 (8th Cir. 1975); United States ex rel. Fisher v. Driber, 546 F.2d 18, 22 (3d Cir. 1976). The issues here are (1) whether prospective jurors were disqualified because of their death penalty views, (2) if they were, whether the resulting death-qualified jury was more prone to convict Grigsby or to convict him of a higher degree of murder, and (3) if it was, what legal remedy should be accorded Grigsby. There are no special circumstances or relevant cases which indicate that the trial court is a more appropriate forum than the district court for resolution of these issues.
 
 
 15
 We conclude Townsend v. Sain entitles Grigsby to an evidentiary hearing on his constitutional claim, and the appropriate forum for such hearing is the district court. See McQueen v. Swenson, 537 F.2d 976, 978 (8th Cir. 1976).
 
 
 16
 The order of the district court is modified accordingly.
 
 IT IS SO ORDERED.[5]
 
 17
 HEANEY, Circuit Judge, concurring.
 
 
 18
 I agree with Judge Lay that defendants in capital cases have a right to prove that death-qualified jurors are more prone to conviction than jurors who are not so qualified, and to further prove that the jury in this case was so qualified. I also agree with him that if these facts are established, Grigsby must be granted a new trial.
 
 
 19
 While I would prefer to affirm the district court's decision that the state should be permitted to determine the factual issues, I appreciate the fact that Grigsby has thrice been denied a hearing by the state courts and, thus, has exhausted his state remedies. I will thus not dissent on the "forum issue" and will concur in the decision to have the United States District Court resolve the question.
 
 
 20
 I do not share Judge Gibson's concern with the holding in this case. The state has a significant interest in seeing that those who could not levy the death penalty not be allowed to participate in the assessment of the sentence in a capital case; otherwise, a single juror could nullify the state legislature's determination that capital punishment should be available and might be the appropriate punishment. But, that interest is not implicated when a scrupled juror is excluded for cause for guilt determination so long as the juror swears to decide the guilt issue on the basis of the law and the evidence.
 
 
 21
 FLOYD R. GIBSON, Senior Circuit Judge, dissenting.
 
 
 22
 Since I believe that the District Court held an evidentiary hearing on the issue of whether an Arkansas death-qualified jury which meets the minimal standards of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction, I dissent from Chief Judge Lay's opinion. Furthermore, given the record on appeal, I would find as a matter of law that Grigsby had a fair trial on the issue of his guilt.
 
 I.
 
 23
 The District Court opinion, Grigsby v. Mabry, 483 F.Supp. 1372, 1375 (E.D.Ark.1980), makes clear that an evidentiary hearing was held on May 16, 1979. At that time, both parties presented experts and research articles on the issue of the potential guilt-proneness of death-qualified juries. The District Court subsequently denied the petitioner's contention that he was tried by an unrepresentative cross-section of the community. Id. at 1376-85. Grigsby does not raise this denial as an issue on appeal. The District Court did, however, find some merit in Grigsby's attack on the impartiality of his Witherspoon death-qualified jury. Id. at 1388-89. The District Court eventually remanded the case to Grigsby's trial court in Arkansas for a final determination of his challenge. On appeal, Grigsby has argued that the District Court or this court should make the determination of whether he was denied a fair trial. I believe that this court has jurisdiction to make this determination.
 
 
 24
 This court has jurisdiction to review any "final order" of a district judge in a habeas corpus proceeding. 28 U.S.C. § 2253 (1976). The mere fact that the District Court may have entered its order precipitately or after an incomplete hearing does not render the order non-final. Browder v. Director, Department of Corrections, 434 U.S. 257, 267, 98 S.Ct. 556, 562, 54 L.Ed.2d 521 (1978). Even if the District Court had failed to hold any evidentiary hearing whatever, its order would still be final for purposes of this court's jurisdiction to review its merit. Id. at 266, 98 S.Ct. at 561.
 
 
 25
 While remand to the District Court would ordinarily be appropriate when the trial court fails to reach a decision on the merits, an exception is presented where the evidence is mainly documentary in nature. In such a case, "an appellate court has the right to interpret such evidence independently." Johnson v. Mabry, 602 F.2d 167, 170 (8th Cir. 1979). In addition, Grigsby has asked this court to make a determination on the merits based on the record. Given these circumstances, remand would serve no useful purpose. Accordingly, I address the merits of Grigsby's petition.
 
 II.
 
 26
 The issue presented is whether an Arkansas death-qualified jury which meets the minimal standards of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), results in an impartial jury on the issue of guilt. This issue is not the same as the one posed by the Supreme Court in Witherspoon itself. Id. at 517-18, 88 S.Ct. at 1774; ante at 526-527 & n.2. In Witherspoon, the State of Illinois excluded for cause all jurors that had "conscientious scruples against capital punishment, or that * * * opposed * * * the same." Ill.Rev.Stat., c. 38, § 743 (1959); Witherspoon, supra, 391 U.S. at 512, 88 S.Ct. at 1772. Witherspoon did not "involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt." Id. at 513, 88 S.Ct. at 1772 (footnote omitted). In the present case these are precisely the type of jurors whose exclusion Grigsby objects to. The Arkansas jury which tried Grigsby met the Witherspoon standards.
 
 
 27
 If Grigsby were to prevail in his petition, the State of Arkansas would be required to seat jurors whose moral beliefs on the death penalty prevented them from rendering an impartial decision in a capital case, and instead would be required to seat jurors who had announced in advance that they did not intend to follow the instructions of the court. In effect, one man on a jury who disagreed with Arkansas' views concerning the death penalty would be allowed to impose his will upon the rest of the citizenry regardless of the guilt of the defendant. Since Arkansas requires a unanimous verdict in capital cases, see Ark.Stat.Ann. § 41-1302 (1977), the imposition of the death penalty would be turned into a lottery, with the defendant's winning ticket to be found at voir dire. Given this possible future scenario, I believe the imposition of capital punishment in Arkansas could well become arbitrary and, therefore, unconstitutional. See Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
 
 
 28
 I find that the evidence produced at the hearing in the District Court failed to establish that Grigsby had been denied a fair trial. First, many of the studies cited by Grigsby on appeal deal with juries which violated Witherspoon. These studies, therefore, are irrelevant in Grigsby's case.[1] In technical terms, the random samples of jurors or potential jurors are biased and are no longer representative of juries which meet the Witherspoon criteria. In other words, even if these studies demonstrate that a defendant tried by a jury in violation of Witherspoon is one that is prejudiced in favor of conviction, it does not necessarily follow that Grigsby was not tried by an impartial jury. Second, social science empirical studies are often subject to various interpretations. One need only refer to the controversey surrounding Professor Isaac Ehrlich's rather straightforward study concerning the deterrent effect of the death penalty to realize the difficulty in "proving" a hypothesis one way or another. See Ehrlich, The Deterrent Effect of Capital Punishment: A Question of Life or Death, 65 Am.Econ.Rev. 397 (1975); see, e. g., Editors' Introduction, Statistical Evidence on the Deterrent Effect of Capital Punishment, 85 Yale L.J. 164-69 (1975). See also Gregg v. Georgia, 428 U.S. 153, 184-86 (1976).
 
 
 29
 Grigsby here bears the burden of proof on showing a denial of his right to a fair trial. See Bumper v. North Carolina, 391 U.S. 543, 545, 88 S.Ct. 1788, 1789, 20 L.Ed.2d 797 (1968). Given the evidence in the record on this appeal and Grigsby's undoubted guilt, he has been unable to meet that burden. At this time the data remain "too tentative to establish that * * * (Witherspoon death-qualified jurors) * * * tend to favor the prosecution in the determination of guilt." Witherspoon, supra, 391 U.S. 517, 88 S.Ct. at 1774 (footnote omitted). Regardless of their beliefs on the propriety and efficacy of the death penalty, the jurors must first determine guilt or innocence. To contend that a juror holding positive views on the validity of the death penalty would vote to find an innocent defendant guilty is absurd. All rational persons who do not have an immediate personal interest in the controversy at issue have a basic instinct and desire to accord justice to other persons, which desire or instinct is as strong to acquit the innocent as it is to call the guilty to task. What Grigsby wants is not an impartial jury but a jury biased in favor of acquitting the guilty for whatever reasons might be advanced.
 
 
 30
 Finally, the original trial did not present a close or difficult issue, and further court proceedings on the issue here presented appears to me to be an additional burden that our court system should not have to bear. I would reverse and remand with instructions that the petition be dismissed.
 
 
 
 [1]
 Petitioner urges that the jury was "death-qualified" in that the state trial judge refused Grigsby's counsel's request not to exclude for cause from the jury any prospective venireman who possessed scruples against rendering the death penalty
 
 
 [2]
 Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Court stated:
 The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was.
 Id. at 517-18, 88 S.Ct. at 1774 (footnotes omitted).
 
 
 [3]
 Several courts have declined to find there exists sufficient evidence available on the record before them to prove the conviction propensities of death-qualified juries. See Bumper v. North Carolina, 391 U.S. 543, 545, 88 S.Ct. 1788, 1789, 20 L.Ed.2d 797 (1968); Witherspoon v. Illinois, 391 U.S. 510, 517-18 n. 11, 88 S.Ct. 1770, 1774 n. 11, 20 L.Ed.2d 776 (1968); Spinkellink v. Wainwright, 578 F.2d 582, 593-95 (5th Cir. 1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); United States ex rel. Clark v. Fike, 538 F.2d 750, 761-62 (7th Cir. 1976), cert. denied, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977); United States ex rel. Townsend v. Twomey, 452 F.2d 350, 362-63 (7th Cir.), cert. denied, 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972); Craig v. Wyse, 373 F.Supp. 1008, 1011 (D.Colo.1974)
 
 
 [4]
 Ultimately, this court ordered the evidentiary hearing to be held in the district court rather than in state court. McQueen v. Swenson, 537 F.2d 976, 978 (8th Cir. 1976)
 
 
 [5]
 We also vacate the district court's finding that the defendant was not denied a jury composed of a cross-section of the community. Because the record is to be supplemented by further evidence and in view of the close relationship of petitioner's claim on the cross-section issue to the guilt-proneness claim, the district court should, upon completion of all the evidence, enter its findings on both claims. In this way there can be a single appeal on both issues regardless of the outcome in the district court on either issue
 
 
 [1]
 As noted by Professor Jurow:
 (I) More specific inquiry is needed to determine in just what way and to what degree a person is or is not in favor of capital punishment. Witherspoon set down very precise guidelines for questioning a juror to determine his attitude toward capital punishment. The Court made it very clear that "general objections" to the death penalty or expressions of "conscientious or religious scruples" were insufficient to exclude a juror. The studies described above all phrased the question in an abstract and, in light of Witherspoon, a legally irrelevant manner. In addition, none of the studies asked subjects clearly to distinguish between their personal views about the death penalty and how they would consider the death penalty when serving as a juror. As the Court noted in Witherspoon, a juror may be able to subordinate his personal views to what he perceives "to be his duty to abide by his oath as a juror and to obey the law of the State."
 Jurow, New Data on the Effect of a "Death Qualified" Jury on the Guilt Determination Process, 84 Harv.L.Rev. 567, 575 (1971) (footnote omitted). See also id. at 591, 598.
 In fact, Jurow's study stands out in its attempt to measure how a potential juror would consider the death penalty if he were serving on a jury. See id. at 577, 590-91. Jurow, however, only attempted to measure the guilt-proneness of those jurors who "would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial * * *." Witherspoon, supra, 391 U.S. at 522-23 n. 21, 88 S.Ct. at 1777 n. 21; see Jurow, supra, 84 Harv.L.Rev. at 599. Jurow did not attempt to measure the guilt-proneness of those jurors whose "attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt." Witherspoon, supra, 391 U.S. at 522-23 n. 21, 88 S.Ct. at 1777 n. 21. With regard to the former, Jurow, using a CPAQ(B) (capital punishment attitude questionnaire), concluded "that even the decision in Witherspoon allows a jury that may be biased in the guilt determining process." Jurow, supra, 84 Harv.L.Rev. at 588. This conclusion was based on statistical analysis significant at the .01 level. See id. at 592, Table VII.
 To reiterate, Jurow failed to measure the guilt-proneness of jurors whose attitude towards the death penalty would prevent them from making an impartial decision as to the defendant's guilt. This type of juror is excludable under Witherspoon and apparently was of the same type as was excluded in Grigsby's trial. The evidence on the record in Grigsby's case at this time, therefore, fails to demonstrate that Grigsby was denied a fair trial.