423 So.2d 1130 (1982)
STATE of Louisiana
v.
Willie WATSON, Jr.
No. 81-KA-2227.
Supreme Court of Louisiana.
November 29, 1982.
*1132 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Morel, Jr., Dist. Atty., Abbott J. Reeves, Kurt Sins, Asst. Dist. Attys., for plaintiff-appellee.
Ralph R. Miller, Norco, John L. Diasselliss, III, Gross, Diasselliss & Tillman, LaPlace, for defendant-appellant.
PER CURIAM.
This is an appeal from a conviction of first degree murder and a sentence of death. Although we affirm the conviction, we must reverse the death sentence and remand for a new sentencing hearing, because the trial judge erroneously instructed the jurors that they were required to impose a death sentence if they found that the evidence established the existence of one or more aggravating circumstances.

Facts[1]
On the evening of April 5, 1981, defendant abducted Kathy Newman at gunpoint as she arrived at her apartment in the Carrollton section of New Orleans. Defendant forced her back inside her car and required her to drive into an isolated area of St. Charles Parish, where he robbed her of her jewelry and raped her vaginally and anally. After defendant told Miss Newman to dress herself, he shot her in the back of the head as she did so. Defendant later stated that he killed her because he was afraid that she would recognize him.

Reivew of Guilt Phase
The evidence established beyond a reasonable doubt that defendant killed Miss Newman with the specific intent to kill and that he was engaged in the perpetration of an aggravated rape and an armed robbery.[2] R.S. 14:30.
Defendant first contends that the trial court erred in denying his motion for a change of venue. Defendant based his motion on two newspaper articles which reported that he had been booked with additional charges for sex crimes after being identified by victims who had recognized him from television and newspaper reports of this murder.
In a motion for change of venue, defendant must prove that prejudice exists in the collective minds of the people in the community to the extent that a fair trial is impossible. State v. Bell, 315 So.2d 307 (La.1975). Defendant failed to carry that burden here.
This case, involving a murderer and a victim who both resided in Orleans Parish, did not generate substantial pretrial publicity in St. Charles Parish. While many of the persons called as potential jurors had heard or read about the incident, very few had a great deal of knowledge about the facts, and virtually none had formed any impression from pretrial publicity which would prevent their according defendant the presumption of innocence. Moreover, the articles complained of were published within two weeks of the crime and were not current news items at the time of trial.
Thus, there was no inordinate amount of publicity in the case, and government officials apparently had no connection with the release of the publicity that did occur. The record further does not indicate any factors which would affect the attitude of the community toward the defendant or which *1133 would affect the candor and veracity of prospective jurors on voir dire. Accordingly, the motion was properly denied.
In a related assignment, defendant contends the trial court erred in denying his motion for individual voir dire and for sequestration during jury selection. Counsel argues that voir dire in groups, in the presence of other prospective jurors, discouraged accurate and sincere responses to questioning.
The trial court has the discretion to permit individual voir dire when the defendant demonstrates that special circumstances are present. State v. Monroe, 397 So.2d 1258 (La.1981). The fact that the case is a captial case is only one of the considerations in determining whether special circumstances require individual voir dire in order to insure a fair trial. State v. Lindsey, 404 So.2d 466 (La.1981). The record in this case does not present any additional special circumstances which would warrant individual voir dire of the jurors.
Defense counsel, however, argues that the voir dire conducted in the presence of other potential jurors enabled persons seeking to avoid jury service to learn avoidance techniques. While this problem possibly occurs in all cases of jury selection, defendant failed to establish how he was prejudiced by this effect of usual voir dire examination. This assignment of error is without merit.
Defendant next contends that the trial court erred in denying the motion to suppress his confession.
The night after the murder, defendant was arrested in connection with an unrelated felony. After the police recovered Miss Newman's car and found defendant's fingerprints on the car, defendant confessed to the murder and signed a written statement.
At the hearing on the pretrial motion, the officers who obtained the confession testified that defendant was advised of his constitutional rights prior to the interview, that he read and signed the form waiving those rights, that he first gave an oral statement, and that after another advice of rights he gave and signed a written statement.[3] All officers denied any beating, intimidation, coercion, threats or promises.
On the other hand, defendant denied receiving the Miranda advice and asserted that he was beaten and threatened with a pistol. Defendant also testified the officers refused his request for an attorney and induced his statement with promises to talk to the district attorney on his behalf.
The conclusions of the trial court on the credibility and weight of testimony relating to the voluntariness of the confession are entitled to great weight and will not usually be disturbed on appeal, unless the conclusions are not supported by the evidence. State v. Dison, 396 So.2d 1254 (La. 1981). In the present case, the testimony of the officers clearly established the voluntary and knowledgeable nature of defendant's statement, and the officers flatly and specifically denied defendant's protestations to the contrary. After hearing all of the evidence, the trial court made a credibility determination and accepted the officers' testimony over the directly contrary testimony of the defendant. On this record, we cannot say that there was error in the trial court's determination of credibility.
Defendant also contends that the trial court erred in denying his motion to suppress evidence obtained from his apartment in a search conducted pursuant to a warrant. Defense counsel argues that the warrant was not based on probable cause because of errors in the affidavit relating only to the dates on which various events occurred.
The affidavit, based on facts obtained from defendant's confession, asserts that the shooting occurred on Sunday, April 5, that the victim was discovered on Sunday, April 6, and that the autopsy was conducted on Monday, April 7. There are additional *1134 references to Sunday, April 6 and Monday, April 7, and the typed date of April 8 appears below the judge's signature at the bottom of the warrant.
The date on which the warrant was actually issued (and which should have appeared above the judge's signature) was April 7. Furthermore, Sunday was April 5 and Monday was April 6, contrary to several notations on the affidavit. The confusion over the dates was clearly not the result of an intentional misrepresentation. All of the information in the affidavit was otherwise correct, and the dates in the affidavit were in no way critical to the application for the warrant or to the establishment of probable cause. We conclude that the unintentional errors in the dates had no effect on the validity of the warrant and that the motion to suppress the evidence seized pursuant to that warrant was properly denied.[4]
Defendant finally contends that the trial court erred in requiring him to plead not guilty to the offense, because the overwhelming evidence of his guilt in the first phase of the trial prejudiced the jury against him in the penalty phase.
C.Cr.P. Art. 557 prohibits the court from accepting an unqualified plea of guilty in a capital case.[5] In effect, defense counsel suggests that he should be allowed to enter a bifurcated plea which would establish guilt in the guilt phase, but would allow him to challenge the prosecution's seeking capital punishment in the penalty phase.
Defense counsel has not established any prejudice from the trial court's ruling in this case. In the guilt phase, he did not present any evidence to the jury which challenged the prosecution's evidence of guilt. In opening argument of the penalty phase, he could have pointed out the foregoing fact to the jury and argued that the only issue from the outset was life or death, pointing out that he was required by law to plead not guilty in the first phase in order to contest that issue in the penalty phase. We conclude that there is no prejudice in the statutory scheme which requires that a plea of not guilty be entered in a capital case.

Review of Penalty Phase
Although defense counsel argued several assignments of error relating to the penalty phase, it is necessary only to address the error in the trial court's instruction which mandates reversal of the death penalty.[6]
At the beginning of his instruction to the jury after the presentation of evidence in the penalty phase, the trial judge instructed the jury as follows:
"In reaching your decision, regarding the sentence to be imposed, you must be guided by these instructions. You are required to consider the existence of aggravating and mitigating circumstances in deciding which sentence should be imposed.
"You will be furnished a list of the statutory aggravating and mitigating circumstances which you may take with you during your deliberation."
*1135 The judge then read the aggravating circumstances listed in C.Cr.P. Art. 905.4 and continued the instruction as follows:
"In arriving at your sentence, you must first determine whether at the time the crime was committed any one or more of the statutory aggravating circumstances existed beyond a reasonable doubt.
"Reasonable doubt means a doubt that is based upon reason, and it must be substantial rather than speculative. It is not a mere possible doubt. It's an actual doubt. It is a serious doubt for which you could give good reason. A reasonable doubt is one based upon common sense. If after giving consideration to all of the facts and the circumstances of the sentencing hearing in this case, and your minds are wavering, unsettled, and unsatisfied, then this is a doubt of which the law speaks and which you must resolve in favor of the defendant and return a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. But if that doubt does not exist in your minds as to whether or not the State has established aggravating circumstance or circumstances, then you are obliged to return a sentencing recommendation of death." (Emphasis supplied.)
The above instruction is an inaccurate and incorrect statement of the law of Louisiana.[7] Under the capital sentencing procedure, the jury, upon finding the existence of a statutory aggravating circumstance beyond a reasonable doubt, may consider recommending the penalty of death. C.Cr.P. Art. 905.3. The instruction in this case incorrectly told the jurors that they, upon finding the existence of a statutory aggravating circumstance beyond a reasonable doubt, must return a recommendation of death. That incorrect statement of the law deprived the jury of the sentencing discretion which is so vital to the constitutionality of Louisiana's capital sentencing scheme.[8] See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In fact, the mandatory feature of the prior capital sentencing law was the basis on which the United States Supreme Court declared the prior law unconstitutional in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
We have examined the remainder of the trial court's instruction, but are unable to find any place at which the trial court corrected the devastatingly prejudicial error at the beginning of the instruction.[9] The discretion *1136 of the jury is so critical in the capital sentencing procedure that any instruction by the trial court which deprives the jury of that discretion defeats the entire scheme. The incorrect statement of the law in this case requires the setting aside of the death penalty and the retrial of the penalty phase of the proceeding.
Accordingly, the conviction is affirmed, but the penalty of death is set aside, and the matter is remanded for a new penalty hearing.
NOTES
[1] Most of the facts were taken from defendant's confession, which was ruled admissible after a hearing on a motion to suppress.
[2] Defendant's statement that he shot Miss Newman because he thought she could identify him clearly establishes the essential element of specific intent.
[3] Defendant at first denied the murder, but after being confronted with evidence of his fingerprints on the victim's car, he gave a verbal confession. At that time, the officers decided to take a written statement.
[4] Moreover, warrants and affidavits should be accorded a commonsense and realistic interpretation, without technical requirements of elaborate specificity or of preciseness in unimportant details. In doubtful cases, preference should be given to upholding the validity of the warrant, so as to encourage police officers to submit evidence to a judicial officer before acting. State v. Huffman, 419 So.2d 458 (La. 1982); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
[5] The trial court may, but is not required to, accept a plea of guilty without capital punishment in a first degree murder case. State v. Jett, 419 So.2d 844 (La. 1982).
[6] Defendant also contended that the trial court erred in denying his motion for a continuance of the trial date, which was only 31 working days after the arraignment. (The motion for continuance was not filed until two days before trial, and this court denied, by a 4-3 vote, a supervisory writ seeking review of the denial.)

Although a substantial question is raised by this assignment of error, defense counsel's motion complained only that he was prejudiced in his preparation for the sentencing portion of the bifurcated trial. In oral argument before this court, defense counsel conceded that he was afforded adequate time for his preparation for the guilt phase, and counsel stated that it would not be necessary for this court to address the issue of the continuance if the death sentence were reversed on other grounds.
[7] Compare the following suggested instruction in the Louisiana Judges' Benchbook, Volume I, Jury InstructionsCriminal, pp. C1-2 and C1-3 (Louisiana Judicial College, 1978).

"Before you decide that a sentence of death should be imposed you must unanimously find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.
"If you find beyond a reasonable doubt that any of the statutory aggravating circumstances existed you may consider imposing a sentence of death. If, however, you do not unanimously find beyond a reasonable doubt that any of the statutory aggravating circumstances existed, then life imprisonment without benefit of probation, parole or suspension of sentence is the only sentence that may be imposed.
"Even if you find the existence of an aggravating circumstance, you must also consider any mitigating circumstances before you decide that a sentence of death should be imposed." (Emphasis added.)
[8] Indeed, under the present statutory scheme after the 1979 amendment to R.S. 14:30, the jury must find the existence of at least one aggravating circumstance in order to return a verdict of guilty of first degree murder. The crime in the present case occurred in 1981. Therefore, the jury had already found the existence of at least one aggravating circumstance in the guilt phase of the present case, and the instruction at the end of the penalty phase in effect told the jury that there was no choice in this case except to return a recommendation of death.
[9] At one point, the trial judge instructed the jury that if the prosecution failed to establish an aggravating circumstance beyond a reasonable doubt, then the jury would not even be authorized to consider the penalty of death. This correct statement of the law, however, does not imply that the prosecution's success in establishing an aggravating circumstance beyond a reasonable doubt only entitles the jury to consider the penalty of death and does not require imposition of the recommendation of death.

We conclude that the remainder of the instruction, although accurate, does not serve to correct or lessen the impact of the incorrect statement at the beginning of the instruction.