Robert Wayne WILLIAMS

v.

**John T. KING, Secretary of the Department of Corrections, State of Louisiana, and Ross Maggio, Warden, State Penitentiary, Angola, Louisiana.**

Civ. A. No. 83–1120–B.

United States District Court,
M.D. Louisiana.

Oct. 21, 1983.

Samuel S. Dalton, Jefferson, La., for plaintiff.

Kay Kirkpatrick, Asst. Dist. Atty., 19th Judicial Dist., Baton Rouge, La., for defendants.

POLOZOLA, District Judge:

Robert Wayne Williams has filed an application for stay of his execution which is scheduled for October 25, 1983, and an application for a writ of habeas corpus. For reasons which follow, the Court hereby denies petitioner's application for a stay of his execution and further denies petitioner's application for a writ of habeas corpus. The Court also finds that petitioner's application is frivolous and without merit, and, therefore, refuses to issue a certificate of probable cause.

## I. PROCEDURAL HISTORY OF THE CASE

This is the second time Robert Wayne Williams has filed an application for a stay of execution and for a writ of habeas corpus with this Court. The procedural history of this case is for the most part set forth in the prior opinions rendered by this Court and by the Fifth Circuit Court of Appeals. *Williams v. Blackburn,* (M.D.La.1981), aff. *Williams v. Blackburn,* 649 F.2d 1019 (5th Cir.1981), affirmed, rehearing en banc, *Williams v. Maggio,* 679 F.2d 381 (5th Cir. 1982). Thereafter, the United States Supreme Court denied petitioner's application for a writ of certiorari. *Williams v. Maggio,* — U.S. —, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). On July 14, 1983, Justice Brennan stayed the effect of the denial of certiorari. On September 8, 1983, the United States Supreme Court denied petitioner's application for a rehearing of the Court's denial of petitioner's application for a writ of certiorari. *Williams v. Maggio,* — U.S. —, 104 S.Ct. 38, 77 L.Ed.2d 1456 (1983). Thereafter, Judge Frank Foil

of the Nineteenth Judicial District Court for the Parish of East Baton Rouge issued a Warrant of Execution of Person Condemned on September 20, 1983, directing that petitioner be executed on October 25, 1983, between the hours of 12:00 o'clock midnight and 3:00 a.m. Petitioner then filed an application for a writ of habeas corpus with the Nineteenth Judicial District Court raising the very same issues he now urges in the federal application for writ of habeas corpus now pending before this Court. On October 4, 1983, Judge Frank Foil denied petitioner's state court application for writ of habeas corpus. On October 14, 1983, petitioner filed an application for a writ of habeas corpus with the Louisiana Supreme Court together with a request for a stay of execution. The Louisiana Supreme Court unanimously denied petitioner's application for a stay of execution and also unanimously denied petitioner's application for a writ of habeas corpus. Petitioner then filed the pending application for a writ of habeas corpus with the United States District Court for the Middle District of Louisiana. Thus, the Court finds petitioner has exhausted his available state remedies.

## II. ISSUES RAISED BY PETITIONER

Petitioner raises four grounds for review in this latest application for a stay of execution and writ of habeas corpus. Petitioner contends that his federally protected rights were violated in the following manner:

(1) The Louisiana Proportionality Review in death penalty cases does not meet constitutional standards, and the review made by the Louisiana Supreme Court is inconsistent and disproportionate under the facts and circumstances of petitioner's case.

(2) The death sentence was imposed as a result of the prosecutor's improper closing argument during the sentencing phase of the trial.

(3) Petitioner's death sentence was improper because the jury was instructed on all responsive verdicts to first degree murder even though there was no evidentiary support for a manslaughter verdict.

(4) Petitioner was deprived of an impartial jury composed of a fair cross section of the community insofar as the guilt or innocence phase of the trial because of the manner the jurors were selected and impanelled.

## III. STANDARD OF REVIEW IN A HABEAS CORPUS ACTION

As is previously set forth in this opinion, this is the second application for a writ of habeas corpus filed with this Court. Some thirteen issues were raised in petitioner's first application. An additional four issues are raised in the current application. Without deciding the issue of whether petitioner is guilty of "abuse of the writ" insofar as the filing of successive applications for a writ of habeas corpus is concerned, the Court shall follow the guidelines set forth by the United States Supreme Court in *Barefoot v. Estelle*, —— U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) in resolving the issues raised in this latest application. In *Barefoot*, the Court stated:

"Second and successive federal habeas corpus petitions present a different issue. 'To the extent that these involve the danger that a condemned inmate might attempt to use repeated petitions and appeals as a mere delaying tactic, the State has a quite legitimate interest in preventing abuse of the writ.' * * * Rule 9(b) of the Rules Governing § 2254 Cases states that 'a second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief ... [or if] the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.' * * * Even where it cannot be concluded that a petition should be dismissed under Rule 9(b), it would be proper for the district court to expedite consideration of the petition. The granting of a stay should reflect the presence of

substantial grounds upon which relief might be granted." 103 S.Ct. 3395.

It is clear that "direct appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception." Id., 103 S.Ct. at 3391. *Barefoot* emphasizes that when a petitioner under imminent threat of execution has alleged a substantial denial of a federal right, he must be afforded an adequate opportunity to present the merits of his argument, and he must receive a considered decision on the merits of his claim. Id. 103 S.Ct. at 3394. Thus, the Court in this case has expedited its consideration of petitioner's allegations. The entire state court record has been filed with this Court. A list of all inmates who have been sentenced to death and are currently housed on Death Row at the Louisiana State Penitentiary at Angola has been obtained by the Court [1] and has been filed in the record, together with the citation of each of the 25 cases for which there is a reported decision by the Louisiana Supreme Court.[2] The Court has also required the State of Louisiana to file a response to petitioner's application which has also been considered by the Court. The Court has had adequate time and means for rendition of a considered judgment on the merits prior to the scheduled execution date. Id., 103 S.Ct. at 3394. It is clear that whether a stay is granted depends "on the probability of success on the merits," id., 103 S.Ct. at 3392, and stays of execution are not automatic pending the

filing and consideration of an appeal to the appellate court or a petition for a writ of certiorari to the Supreme Court. "When the process of direct review—which, if a federal question is involved, includes the right to petition [the Supreme] Court for a writ of certiorari—comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." Id. 103 S.Ct. at 3391. Petitioner's case has twice been reviewed by the United States Supreme Court, with the latest review having occurred on September 8, 1983. Thus, the Court shall review the merits of each of petitioner's contentions.

## IV. PETITIONER'S CONTENTIONS

### A. Proportionality Review of Death Sentence

■ Petitioner first contends that the proportionality review of his death sentence has been conducted in an arbitrary and capricious manner in violation of the Eighth and Fourteenth Amendments to the United States Constitution. More specifically, petitioner contends the Louisiana Supreme Court conducted the proportionality review in his case on a district wide basis, *State v. Williams*, supra, 383 So.2d at 374–375, while in two other cases, *State v. Narcisse*, 426 So.2d 118 (La.1983) and *State v. Moore*, 432 So.2d 209 (La.1983), the Louisiana Supreme Court conducted proportion-

---

**1.** See Court Exhibit 1 entitled "Death Row Inmates".

**2.** *State v. Baldwin*, 388 So.2d 664 (La.1980).
*State v. Berry*, 391 So.2d 406 (La.1980).
*State v. Brogdon*, 426 So.2d 158 (La.1983).
*State v. David*, 425 So.2d 1241 (La.1983).
*State v. Felde*, 422 So.2d 370 (La.1982).
*State v. James*, 431 So.2d 399 (La.1983).
*State v. Knighton*, 436 So.2d 1141 (La.1983).
*State v. Lindsey*, 428 So.2d 420 (La.1982).
*State v. Loyd*, 425 So.2d 710 (La.1982).
*State v. Martin*, 376 So.2d 300 (La.1979).
*State v. Mattheson*, 407 So.2d 1150 (La.1981).
*State v. Monroe*, 397 So.2d 1258 (La.1981).
*State v. Moore (Alvin R.)*, 414 So.2d 340 (La. 1982).
*State v. Moore (Avery "Pete")*, 432 So.2d 209 (La.1983).

*State v. Narcisse*, 426 So.2d 118 (La.1983).
*State v. Perry*, 420 So.2d 139 (La.1982).
*State v. Prejean*, 379 So.2d 240 (La.1979).
*State v. Sawyer*, 422 So.2d 95 (La.1982).
*State v. Sonnier*, 402 So.2d 650 (La.1981).
*State v. Taylor*, 422 So.2d 109 (La.1982).
*State v. Watson*, 423 So.2d 1130 (La.1982).
*State v. (Robert W.) Williams*, 383 So.2d 369 (La.1980).
*State v. Willie*, 436 So.2d 553 (La.1983).
In addition to the above cases, two additional cases from East Baton Rouge Parish have been considered and reviewed by the Louisiana Supreme Court in reported decisions: *State v. Clark*, 387 So.2d 1124 (La.1980); *State v. Williams*, 392 So.2d 619 (La.1980). In each of the above cases, only the citation from the Louisiana Supreme Court is set forth.

ality reviews on a state wide basis. Petitioner contends that the issue of the nature and scope of proportionality review is presently before the United States Supreme Court. See *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982), cert. granted, — U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983); *Autry v. Estelle*, — U.S. ——, 104 S.Ct. 24, 78 L.Ed.2d 7 (1983). Thus, petitioner argues that a stay of execution be granted pending a decision by the United States Supreme Court in the *Pulley* case. Petitioner also seeks to have the Court vacate petitioner's death sentence and to order a new sentencing hearing or, alternatively, seeks to have the Court review petitioner's death sentence on a state wide basis. The Court does not believe the Court is required to stay all proceedings herein pending a decision by the United States Supreme Court in the *Pulley* case. On October 11, 1983, the United States Supreme Court denied petitions for writs of certiorari in two cases from Louisiana which raised the proportionality issue. *State v. Lindsey*, 428 So.2d 420 (La.1982), writ denied, — U.S. ——, 104 S.Ct. 261, 78 L.Ed.2d 246; *State v. James*, 431 So.2d 399 (La. 1983), writ denied, — U.S. ——, 104 S.Ct. 263, 78 L.Ed.2d 247. Furthermore, a new sentence hearing is not required under the facts of this case. While the Court believes that the district-by-district proportionality review approved and found constitutionally sound by the Louisiana Supreme Court, by an en banc panel of the Fifth Circuit Court of Appeals and by this Court is still constitutionally acceptable, the Court shall grant petitioner's alternative request to review petitioner's death sentence on a state wide basis.

■ There are currently twenty-seven inmates on death row at the Louisiana State Penitentiary at Angola. Of these twenty-seven inmates, twenty-three inmates, including the petitioner, have appealed their cases to the Louisiana Supreme Court which has written and published formal opinions.[3] Four inmates on death row are apparently still on appeal and no written decision could be found on their cases.[4] Two other written opinions [5] involving death sentences imposed on defendants from East Baton Rouge Parish have also been reviewed by the Court. The Court has carefully reviewed the facts of each of these twenty-five published opinions in which the death penalty was imposed. After reviewing each of these 25 cases and comparing the facts set forth in these cases to petitioner's case, the Court must and does conclude that whether the standard of review is on a district-by-district standard or on a state wide standard, the death penalty imposed in petitioner's case is not disproportionate to the death penalty imposed in similar cases wherein the jury found armed robbery, offenses committed in an especially heinous, atrocious or cruel manner, and knowingly creating a risk of death or great bodily harm as aggravating circumstances as required by Article 905.4 of the Louisiana Code of Criminal Procedure. The Court further finds and concludes that the jury in petitioner's case did not act arbitrarily in comparison with the verdicts returned by other juries in similar cases in Louisiana which recommended the death penalty. In seventeen [6] of the twenty-five reported cases involving the death penalty in Louisiana, the jury which recommended the death penalty found armed robbery as one if not the only statutory aggravating circumstance. These seventeen death sentences were returned in ten of the thirteen parishes [7] wherein death sentences have been recommended by juries. A review of the reported cases also reveals that the two other aggravating circumstances

---

3. See Footnote 2.

4. *State v. Fuller; State v. Glass; State v. Hamilton;* and *State v. Kirkpatrick.*

5. *State v. Clark,* supra; *State v. Williams,* supra.

6. Baldwin, Berry, Clark, David, James, Knighton, Lindsey, Mattheson, Alvin Moore, Avery Moore, Narcisse, Perry, Sonnier, Taylor, Watson, Robert Williams and James Williams.

7. East Baton Rouge, Orleans, Lafayette, Rapides, Ouachita, St. Charles, Bossier, Jefferson, Calcasieu and St. Mary Parishes.

found by the jury to exist in petitioner's case were also found to exist by other juries which recommended death sentences.

The circumstances surrounding the murder committed by the petitioner reveal a reckless disregard for the life of other human beings. As the reported facts of this case reveal, petitioner shot Willie Kelly, a 67-year old black security guard, with a 12-gauge sawed-off shotgun in the face at point blank range. After killing Mr. Kelly and committing the armed robbery, petitioner shot two other people in the feet.

The Court finds that the death penalty imposed in petitioner's case is not disproportionate to the death penalty imposed in the other sixteen cases wherein armed robbery was found to be an aggravating circumstance considering the circumstances involved in petitioner's case.

Therefore, the Court concludes that petitioner's first contention challenging the manner in which his death sentence was reviewed to be without merit.

B. Was the Prosecutor Guilty of Misconduct During Closing Arguments?

■ Petitioner contends the prosecutor's closing and rebuttal arguments at the sentencing phase of petitioner's bifurcated trial constituted flagrant misconduct because the argument:

(1) conveyed a message which tended to lessen the jury's responsibility;

(2) contained misstatements and misrepresentations of the law on review of death sentences by appellate courts;

(3) contained inflammatory statements to the jury;

(4) exceeded the scope of Article 774 of the Louisiana Code of Criminal Procedure; and

(5) was fundamentally unfair.

The standard for reviewing prosecutorial misconduct in a habeas corpus case is whether the prosecutor's actions are of such a nature as to render the trial fundamentally unfair. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Thus, *"Donnelly* teaches that

in a Section 2254 proceeding more than undesirability or even 'universal condemnation' must be shown unless a specific guarantee of the Bill of Rights is involved, it must be shown that the remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Cobb v. Wainwright,* 609 F.2d 754, 755 (5th Cir. 1980). Determining whether the challenged remarks had this effect turns on an assessment of the remarks within the context of the particular trial. *Jones v. Estelle,* 622 F.2d 124 (5th Cir.1980).

■ It must be noted that at no time did defense counsel lodge an objection to the content of the closing argument. In most cases the Court would find that a failure to object would constitute a waiver. See C.Cr.P. Art. 841. However, since this is a capital case, the obligation to examine the record for passion, prejudice or arbitrary factors which would have made the sentencing hearing "fundamentally unfair" is proper.

■ Applying the "fundamentally unfair" standard set forth above, the Court finds that in light of the considerable strength of the case against Williams, the prosecutor's comments did not reach the level which made the trial fundamentally unfair in the sentencing phase.

Article 774 of the Louisiana Code of Criminal Procedure provides that closing argument shall be confined to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant." Petitioner now argues that the cumulative effect of the prosecutor's argument infected the penalty verdict with arbitrariness, prejudice and passion. This argument is without substance or merit and is not supported by the record. An intelligent jury could not have reasonably believed the prosecutor was urging them to ignore the law and base their decision simply on their emotional re-

sponse to the crime. The prosecutor argued that drug addiction should not be considered as a mitigating factor in the crime; the death penalty was justified because of its deterrent effect; the responsibility of the jury was serious; and that this particular crime justified the imposition of the death penalty. The argument did not appeal to prejudice or to passion. There was no introduction of arbitrary factors which might have tainted the verdict. It is not improper to remind a jury of its solemn obligation and its awesome responsibility, or the importance of the task at hand.

While the prosecutor did on occasion give his version of the evidence and his recommendation, he did not personally vouch for the credibility of witnesses. A review of the closing argument made by counsel for petitioner reveals that similar arguments were made in petitioner's defense.[8]

Furthermore, there is no error of law in the jury charge given by the trial judge at both the guilt and sentencing phases of the trial.[9]

Therefore, the Court finds petitioner's argument that the prosecution was guilty of improper conduct to be without merit.

    C.  Was the Death Sentence Imposed in Violation of *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)?

Petitioner contends the trial judge erred because he gave the jury an instruction on all of the responsive verdicts to first degree murder even though there was no evidentiary support for a manslaughter verdict. Petitioner relies on *Hopper v. Evans,* supra. Such reliance is misplaced under the facts of this case.

■ No objection was made to this part of the jury charge by the petitioner at the time of his trial. Under Article 801 of the Louisiana Code of Criminal Procedure, a party who fails to object to a charge "may not assign as an error the giving or failure to give a jury charge or any portion thereof

unless an objection thereto is made". However, the Court will consider petitioner's argument despite his failure to object.

■ Article 803 of the Louisiana Code of Criminal Procedure provides that when "a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the Court shall charge the jury as to the law applicable to each offense." When "there are several grades of an offense contained in a single count, the Court shall charge the jury as to each grade of which the defendant could be found guilty." C.Cr.P. Art. 804(B). Under Article 809, "the judge shall give the jury a written list of the verdicts responsive to each offense charged, with each separately stated." Article 814(A)(1) provides that the "only responsive verdicts which may be rendered where the indictment charges the following offenses are: 1. First Degree Murder: Guilty. Guilty of Second Degree Murder. Guilty of Manslaughter. Not Guilty." Finally, Article 814(C) provides that upon the "motion of the state or the defense, the Court may, in its discretion, exclude a responsive verdict listed in Subarticle A if after all the evidence has been submitted there is no evidence to establish that responsive verdict." Neither the state nor the petitioner requested the Court to exclude manslaughter as a responsive verdict. Furthermore, a review of the record fails to reveal that there was "no evidence to establish" the responsive verdict of manslaughter. The trial judge complied with the mandate set forth in *Hopper v. Evans,* supra, and with Louisiana law. Thus, petitioner's argument on this issue is hereby denied.

    D.  The Need for an Evidentiary Hearing to Determine Whether the Jury Selected was Conviction Prone

■ Petitioner contends that the manner in which juries are empanelled in Louisiana makes the juries "death qualified" and conviction prone. Petitioner seeks to have an

---

8. Trial transcript pp. 282–287.

9. Trial transcript pp. 248 et seq.; pp. 299 et seq.

evidentiary hearing to support this argument. In support of his argument, petitioner relies on *Grigsby v. Mabry*, 637 F.2d 525 (8th Cir.1980) and the memorandum opinion in the same case rendered by a district judge on August 5, 1983. The Court finds the *Grigsby* case is not applicable herein, and thus, no evidentiary hearing is required.

Petitioner's argument that the manner in which Louisiana juries are empanelled makes the jury "death qualified" and more prone to convict was rejected by the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) wherein the Court concluded that most of the very same evidence and studies which petitioner now seeks to introduce at this time were speculative at best and in fact, "too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt." Id., 88 S.Ct. at 1774.

Furthermore, petitioner challenged the manner in which the jury was empanelled in his earlier appeals and applications for a writ of habeas corpus. The Fifth Circuit Court of Appeals in its en banc opinion devoted many pages of the opinion on this issue and found the jury selection procedure to be constitutionally proper. The Court believes the jury in this case was properly and constitutionally empanelled. Therefore, petitioner's challenge to the jury is without merit.

## V. SUMMARY AND CONCLUSION

The Court has very carefully and meticulously reviewed each of the arguments urged by petitioner in this latest application for a writ of habeas corpus. In so doing, the Court has again reviewed the entire record, including the state court record. The Court must and does conclude that it can find no error of any kind which would in any way cause this Court to stay the execution of petitioner which is set for October 25, 1983, or to grant petitioner's application for a writ of habeas corpus. This Court is totally and completely satisfied that petitioner has been accorded all of the constitutional rights to which he is entitled under our system of justice. Petitioner's case has been reviewed on many occasions by many courts, judges and justices. The state trial judge has reviewed the case on a motion for a new trial and on two separate post-conviction applications. The Louisiana Supreme Court has reviewed petitioner's application on three separate occasions, once on direct appeal and twice on applications for a writ of habeas corpus. This Court has now reviewed petitioner's case on two occasions. The Fifth Circuit Court of Appeals has reviewed petitioner's case on one occasion, which also included an en banc review by the Circuit Court. The United States Supreme Court has reviewed petitioner's case on two occasions, with the last review coming shortly over one month ago on September 8, 1983. In fact, an application for rehearing was also considered by the United States Supreme Court before it rendered its decision on September 8, 1983. Not a single court which has reviewed petitioner's arguments on direct appeal or on applications for post conviction relief has found petitioner's claims valid. Thus, the Court concludes it would serve no useful purpose to delay these proceedings in order to conduct an evidentiary hearing on petitioner's complaints.

"Federal courts are not forums in which to relitigate state trials. Even less is federal habeas a means by which a defendant is entitled to delay an execution indefinitely ... 'It is natural that counsel for the condemned in a capital case should lay hold of every ground which, in their judgment, might tend to the advantage of their client, but the administration of justice ought not to be interfered with on mere pretexts.'" *Barefoot v. Estelle*, supra, 103 S.Ct. at 3391.

The Legislature, in its wisdom, has passed legislation which allows juries to recommend the death penalty as one sentencing alternative in first degree murder cases. Very detailed and constitutionally approved procedures have been established

by the Legislature and the courts to be followed before a jury can recommend a death sentence. These procedures were carefully and meticulously followed in this case. A jury composed of citizens of East Baton Rouge Parish has recommended the death sentence. The Courts, including this Court, have affirmed the judgment of the state court. The sentence mandated by Louisiana law should be carried out without further delay and interference from this Court or any other court.

Therefore, petitioner's application for a stay of execution is denied. Petitioner's application for a writ of habeas corpus is also denied.

## VI. CERTIFICATE OF PROBABLE CAUSE

Petitioner also seeks a certificate of probable cause in order that he may file an appeal with the Fifth Circuit Court of Appeals. A "certificate of probable cause requires petitioner to make a 'substantial showing of denial of [a] federal right.'" *Barefoot v. Estelle*, supra, 103 S.Ct. at 3394. The "severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." Id., 103 S.Ct. at 3394. Finally, a certificate of probable cause should not issue where the Court finds the appeal is "frivolous and entirely without merit." Id., 103 S.Ct. 3394. For reasons previously set forth in this opinion the Court finds that since petitioner has failed to make a substantial showing of a denial of a federal right, petitioner's application is frivolous and without merit. Therefore, petitioner's request for a certificate of probable cause to appeal and stay execution pending appeal is hereby denied.

## VII. ORDER OF COURT

For reasons set forth above:

IT IS ORDERED that the motion of Robert Wayne Williams for a stay of execution be and it is hereby DENIED.

IT IS FURTHER ORDERED that petitioner's application for a writ of habeas corpus be and it is hereby DENIED.

IT IS FURTHER ORDERED that the motion of Robert Wayne Williams for a certificate of probable cause be and it is hereby DENIED.

IT IS FURTHER ORDERED that the motion of Robert Wayne Williams for a stay pending appeal be and it is hereby DENIED.

IT IS FURTHER ORDERED that the Clerk of Court shall immediately notify the parties of the Court's decision in this case.

Judgment shall be entered accordingly.